IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ZACHARY ROYAL,

        Plaintiff,

v.                                     1:14-cv-0025-WSD

CLYDE L. REESE, III, in his
Official Capacity as Commissioner
of the GEORGIA DEPARTMENT
OF COMMUNITY HEALTH, and
FRANK BERRY, in his Official
Capacity as Commissioner of the
GEORGIA DEPARTMENT OF
BEHAVIORAL HEALTH AND
DEVELOPMENTAL
DISABILITIES,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Zachary Royal's Motion for a Temporary Restraining Order (the "TRO Motion") [3].

## I.   BACKGROUND

Late in the afternoon on January 3, 2014, Plaintiff Zachary Royal ("Plaintiff") filed a motion for a temporary restraining order seeking to enjoin Defendant Clyde L. Reese, III, in his official capacity as the Commissioner of the

Georgia Department of Community Health, from reducing the nursing services Plaintiff currently receives under the Medicaid program known as the Georgia Pediatric Program (GAPP). Plaintiff has spinal muscle atrophy, SMA Type 1, Werdnig-Hoffmann disease, a progressive and degenerative condition of the central nervous system that results in neuromuscular deterioration.

In the TRO Motion, Plaintiff alleged that on January 6, 2014, when he turned 22 years of age, he aged out of the Georgia Pediatric Program (GAPP), a subprogram of Georgia's Medicaid program available to individuals aged 21 and younger. Under GAPP, Plaintiff received 84 hours a week of in-home, skilled nursing services. As of January 7, 2014, Plaintiff is no longer eligible for services available under the GAPP subprogram but is eligible for services under the Medicaid Independent Care Waiver Program (ICWP). ICWP provides home- and community-support and services for adults with disabilities who would otherwise be cared for in an institution. Plaintiff alleges that the ICWP program offers only personal support services and while it provides for skilled nursing visits, they are not at the same continuous-care level he was receiving under GAPP. Plaintiff claims the level of care available to him under ICWP is insufficient to provide him adequate medical care in light of his condition.

Plaintiff further alleges that he applied for the Comprehensive Supports Waiver Program (COMP), but that Defendants determined that he was ineligible for services under COMP.  Under COMP, Plaintiff asserts he would continue to receive the same in-home, skilled nursing care that he currently receives under GAPP.

Plaintiff contends that Defendants illegally denied Plaintiff entry into COMP and, further, that the more limited nursing care that Defendants propose under ICWP will cause Plaintiff's condition to worsen and likely will result in his hospitalization.  Plaintiff argues that this institutionalization violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, which prohibit the discrimination against individuals with disabilities, including the provision of public services in segregated settings.

At around 5:00 p.m. on January 3, 2014, the Court conducted a hearing on the TRO Motion.  Although Plaintiff's counsel had left one or more messages, late in the afternoon on January 3, 2013, to advise Defendants he had filed the TRO Motion and had requested an immediate hearing, Defendants did not receive these notices.  The Court, through its own efforts, was able to contact counsel for Defendants and arranged for counsel for the Defendant to participate in the

5:00 p.m. hearing by telephone. During the hearing, counsel for Defendants stated the Defendants had not received or reviewed the TRO Motion and wanted to be heard on the motion. The Court, concluding that the Defendants were entitled to be heard, reset the hearing for 3:00 p.m. on January 6, 2014.

At the January 6, 2014, hearing, Defendant and Plaintiff acknowledged that the state Medicaid plan authorized up to fifty (50) home health skilled nursing visits and that Plaintiff is eligible for additional skilled nursing visits under an IWCP waiver. In addition, Plaintiff has the option to self-direct care under a Consumer Directed Care Option, through which skilled nursing visits may be available. The hearing also disclosed that Plaintiff did not engage the process necessary to allow these services to be available, to determine the level of care to which he is entitled and which may be necessary to avoid care at an inpatient facility, and whether that level of care is necessarily the same level of care he was receiving under GAPP.

**II.   DISCUSSION**

    A.   <u>Legal Standard on a Motion for a TRO</u>

To be eligible for a temporary restraining order ("TRO") or preliminary injunctive relief under Rule 65, a movant must establish each of the following elements: (1) a substantial likelihood of success on the merits; (2) that irreparable

injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.  See Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005); Parker v. State Bd. of Pardons and Paroles, 275 F.3d 1032, 1034-35 (11th Cir. 2001).  Preliminary injunctive relief is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements.  Four Seasons Hotels and Resorts v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003).

The elements for a TRO are essentially the same as for a preliminary injunction, except that "[t]he motion must be supported by allegations . . . that such [irreparable] injury is so imminent that notice and hearing would be impractical if not impossible."  Hernandez v. Board of Regents, 1997 WL 391800, *1 (M.D. Fla.1997) (quoting Chase Manhattan Bank v. Dime Savings Bank of New York, 961 F. Supp. 275, 276 (M.D. Fla.1997)).  Fundamentally, TROs are "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction."  11A Wright & Miller, Federal Practice & Procedure: Civ.2d § 2951.

A. <u>Analysis</u>

The Court finds that Plaintiff has demonstrated a likelihood of success on the merits of his claim to the extent that he will be eligible to receive some in-home, skilled nursing care.[1] As Defendants acknowledged, Plaintiff is eligible under the state Medicaid plan for up to fifty (50) home health skilled nursing visits and for additional skilled nursing visits available under IWCP. Although Plaintiff may not be entitled to the 84 hours a week of in-home, skilled nursing care that he was receiving under GAPP, there appears to be no dispute that Plaintiff is entitled to receive the benefit of skilled nursing care provided in his home environment. Accordingly, the Court concludes that appropriate relief in this case, at least until a preliminary injunction hearing can be conducted and a full evidentiary record can be developed, is for Plaintiff to receive three (3) visits per day by personal support assistants or nursing assistants, and two (2) visits per day by a skilled nurse.

In light of the serious nature of Plaintiff's medical condition, the Court finds that Plaintiff may well suffer irreparable injury if some in-home, skilled nursing care was not provided now that Plaintiff has aged out of GAPP. Further, Defendants have acknowledged that Plaintiff is entitled to at least fifty (50) visits

---

[1] The Court determined the Plaintiff did not present sufficient legal authority or a sufficient factual basis for the Court to find at this stage of the action that Plaintiff had a likelihood of success on his claim under COMP.

by a skilled nurse, and therefore granting Plaintiff limited relief in this regard does not present substantial harm to Defendants.  The Court finds, in any case, that that the threatened injury to Plaintiff if relief is not granted outweighs the harm the relief inflicts on Defendants.  Finally, relief to Plaintiff serves the public interest in protecting the medical well-being of a Georgia citizen, an interest that Defendants necessarily share.

### III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Clyde L. Reese, III, in his official capacity as the Commissioner of the Georgia Department of Community Health, provide to Plaintiff Zachary Royal three (3) visits per day by personal support assistants or nursing assistants, and two (2) visits per day by a skilled nurse.  The visits shall be coordinated with Plaintiff to occur at appropriate intervals during the day when Plaintiff's father is at work.  The skilled nurse visits also shall be coordinated with Plaintiff to occur at those times best suited to Plaintiff's medical needs, including as his treating physician may recommend.  This order will remain in effect until further notice from the Court.

**IT IS FURTHER ORDERED** that Counsel for the parties shall file, by 5:00 p.m. on each Friday this Order is in effect, a report confirming that the visits

required by this Order were made and the times that they occurred. These reports should include a general assessment of Plaintiff's condition during the preceding week.

**IT IS FURTHER ORDERED** that if Plaintiff is required to be placed at a hospital or other facility a report shall be filed by counsel for the parties within 24 hours of such occurrence in which counsel shall advise the Court of the purpose of such treatment and its outcome.

**SO ORDERED** this 7th day of January 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE