IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ZACHARY ROYAL,<br><br>        **Plaintiff,**<br><br>v.<br><br>CLYDE L. REESE, III, in his official capacity as Commissioner of the Georgia Department of Community Health, and FRANK BERRY, in his official capacity as Commissioner of the Georgia Department of Behavioral Health and Developmental Disabilities,<br><br>        **Defendants.** | 1:14-cv-25-WSD |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss [41].

**I.     BACKGROUND**

      A.     <u>Relevant Factual Allegations</u>

Plaintiff Zachary Royal ("Plaintiff") suffers from Spinal Muscle Atrophy Type 1 ("SMA"), a progressive and degenerative condition of the central nervous system. (Compl. [1] ¶ 12.) Plaintiff's condition causes him to suffer a deterioration of all parts of his neuromuscular system. (<u>Id.</u>) As a result, Plaintiff is not able move functionally, with the exception of limited movement of his left

hand.  He cannot control his tongue or control or maintain his head position.  (Id. ¶ 17.)  He has substantial limitations in "self-care, mobility, and capacity for independent living."  (Id. ¶ 20.)  Plaintiff's condition requires a variety of treatments and interventions, including continuous monitoring of his respiratory system, nebulizer treatments, theravest treatments, and suctioning to prevent choking.  (Id. ¶¶ 13–16.)

Before his 21st birthday on January 6, 2014, Plaintiff was a beneficiary of the Georgia Pediatric Program ("GAPP") Medicaid program available to individuals under the age of 21.  (Id. ¶¶ 4, 21.)  As a person under 21, Plaintiff was entitled under GAPP to receive certain care, including 84 hours per week of in-home skilled nursing care.  (Id. ¶ 21.)  The skilled nurses provided by GAPP performed many of Plaintiff's various treatments and interventions.  (See id. ¶ 15.)  Plaintiff alleges that his health will deteriorate and he will require hospitalization if he does not receive 84 hours per week of in-home skilled nursing care.  (Id. ¶ 4.)

Before Plaintiff turned 21, he sought to secure continuation of the 84 hours of in-home skilled nursing care he was receiving under GAPP by applying for services from two Georgia Medicaid programs: the Comprehensive Supports Waiver Program (the "COMP Waiver"), administered by the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD"), and the

Independent Care Waiver Program (the "IC Waiver"), administered by the Georgia Department of Community Health ("DCH").  (Id. ¶ 23.)  On April 24, 2013, DBHDD denied Plaintiff's application for COMP Waiver services on the ground that Plaintiff does not have an intellectual disability and therefore is not eligible for participation in the COMP Waiver.  (Id. ¶ 27.)  DCH approved Plaintiff for some services under the IC Waiver, but did not approve in-home skilled nursing care.  (Id. ¶¶ 30–31.)

    B.    Procedural History

On January 3, 2014, Plaintiff filed this action against Defendants Clyde L. Reese, III ("Reese"), in his official capacity as Commissioner of DCH, and Frank Berry ("Berry"), in his official capacity as Commissioner of DBHDD (collectively, "Defendants").  In his Complaint [1], Plaintiff alleges that Berry violated Title II of the Americans with Disabilities Act of 1990 (the "ADA") and the Rehabilitation Act of 1973 (the "Rehabilitation Act") by denying Plaintiff's application for participation in the COMP Waiver.  Plaintiff alleges that Reese violated Title II of the ADA and the Rehabilitation Act by failing to include in Plaintiff's IC Waiver services at least 84 hours per week of in-home skilled nursing care.

On March 6, 2014, Defendants filed their Motion to Dismiss seeking dismissal, for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, of Plaintiff's claims against Berry based on the COMP Waiver.[1]

## II.  DISCUSSION

### A.  Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences." Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010). Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true." Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (1996)). Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true. See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (construing Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

---

[1] Defendants do not seek dismissal of Plaintiff's claims against Reese based on the IC Waiver.

4

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570)). Mere "labels and conclusions" are insufficient. Twombly, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). This requires more than the "mere possibility of misconduct." Am. Dental, 605 F.3d at 1290 (quoting Iqbal, 556 U.S. at 679). The well-pled allegations must "nudge[] their claims across the line from conceivable to plausible." Id. at 1289 (quoting Twombly, 550 U.S. at 570).

B. Analysis

Title II of the ADA prohibits certain forms of discrimination by "public entities," including state government agencies, against individuals with disabilities:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

See 42 U.S.C. § 12132; see also id. § 12131(1) (defining "public entity"). The

Rehabilitation Act similarly prohibits such discrimination by entities that receive federal funds:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  Individuals may bring private actions, and obtain injunctive and declaratory relief, for violations of these provisions.  See 42 U.S.C. § 12133 (incorporating the remedies available under 29 U.S.C. § 794a); 29 U.S.C. § 794a(2) (incorporating the remedies available to enforce 42 U.S.C. § 2000d); see also Alexander v. Sandoval, 532 U.S. 275, 280 (2001) (recognizing that it is "beyond dispute that private individuals may sue to enforce [42 U.S.C. § 2000d]"); Cone Corp. v. Fla. Dep't of Transp., 921 F.2d 1190, 1201 n.36 (11th Cir. 1991) (holding that 42 U.S.C. § 2000d "gives plaintiffs an implied private right of action" to obtain "prospective declaratory and injunctive relief").

To state a claim under either Title II of the ADA or the Rehabilitation Act, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was

by reason of the plaintiff's disability." See Bircoll v. Miami-Dade County, 480 F.3d 1072, 1083 (11th Cir. 2007) (citing Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001)); see also Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) ("Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases . . . .").

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). With respect to Plaintiff's claims based on his alleged exclusion from the COMP Waiver program, Defendants argue that Plaintiff failed to allege that he is a "qualified individual with a disability." Defendants contend that the Complaint shows that Plaintiff does not qualify for participation in the COMP Waiver and is thus not "qualified" under Title II and the Rehabilitation Act.

The parties agree that, to be eligible for participation in the COMP Waiver, an individual must, among other things, have an intellectual disability or a "closely related" condition. See DCH Division of Medicaid, Policies and Procedures for

Comprehensive Supports Waiver Program (COMP) General Manual § 706.2 (Jan. 1, 2014) [hereafter COMP Manual].[2] Plaintiff concedes that he does not have an intellectual disability, but argues that the Complaint shows that he has a "closely related" condition.[3]

The parties agree that whether a person has a "closely related" condition is governed by the COMP Manual, which incorporates the definition of "persons with related conditions" provided in 42 C.F.R. § 435.1010:

> Persons with related conditions means individuals who have a severe, chronic disability that meets all of the following conditions:
> (a) It is attributable to—
>   (1) Cerebral palsy or epilepsy; or
>   (2) Any other condition, other than mental illness, found to be closely related to Intellectual Disability because this condition results in impairment of general intellectual functioning or adaptive behavior similar to that of mentally retarded persons, and requires treatment or services similar to those required for these persons.
> (b) It is manifested before the person reaches age 22.
> (c) It is likely to continue indefinitely.
> (d) It results in substantial functional limitations in three or more of

---

[2] The COMP Manual was admitted to the record as Plaintiff's Exhibit 8 during the February 18, 2014, hearing on Plaintiff's Motion for Preliminary Injunction.

[3] In their submissions to the Court, Defendants cited various evidence in the record, but not contained in Plaintiff's Complaint, to show that Plaintiff does not have an intellectual disability. Because Plaintiff does not allege that he has an intellectual disability or argue here that he has an intellectual disability, the Court does not consider Defendant's extrinsic evidence or the propriety of the evidence under Rule 12(b)(6).

> the following areas of major life activity:
> (1) Self-care.
> (2) Understanding and use of language.
> (3) Learning.
> (4) Mobility.
> (5) Self-direction.
> (6) Capacity for independent living.

42 C.F.R. § 435.1010; accord COMP Manual, supra, § 706.2.

The parties dispute whether Plaintiff's condition satisfies subdivision (a) of this definition. Plaintiff concedes that subdivision (a)(1) does not apply because he does not have cerebral palsy or epilepsy, and that he must show that his condition satisfies subdivision (a)(2). Plaintiff further concedes that his condition does not result in "impairment of general intellectual functioning." See 42 C.F.R. § 435.1010(a)(2). Plaintiff argues that his condition results in "impairment of . . . adaptive behavior similar to that of mentally retarded persons." See id.

Neither the COMP Manual nor the relevant federal regulations define "adaptive behavior" or describe adaptive behavior "similar to that of mentally retarded persons." The COMP Manual provides that beneficiaries should be assessed for "adaptive behavior" based on standards recognized by the American Association on Intellectual and Developmental Disabilities (the "AAIDD"). See COMP Manual, supra, § 706.2. Plaintiff acknowledges that the Court should consult the definition of "adaptive behavior" offered by the AAIDD to interpret the

9

term "adaptive behavior" as used in 42 C.F.R. § 435.1010(a)(2).  The AAIDD defines "adaptive behavior" as follows:

> Adaptive behavior is the collection of conceptional, social, and practical skills that are learned and performed by people in their everyday lives.
>
> - Conceptual skills—language and literacy; money, time, and number concepts; and self-direction.
> - Social skills—interpersonal skills, social responsibility, self-esteem, gullibility, naïveté (i.e., wariness), social problem solving, and the ability to follow rules/obey laws and to avoid being victimized.
> - Practical skills—activities of daily living (personal care), occupational skills, healthcare, travel/transportation, schedules/routines, safety, use of money, use of the telephone.

(Pl.'s Br. [48] at 14–15 n.7 (quoting AAID, Definition of Intellectual Disability, http://aaidd.org/intellectual-disability/definition#.U4ZVCSgvBRs).)  This definition shows that "adaptive behavior" concerns the learning of life skills necessary for the performance of routine daily activities.  That is, "adaptive behavior" concerns the cognitive function necessary to learn the conceptual, social, and practical skills of life.

Plaintiff's Complaint does not allege that Plaintiff is impaired in his ability to learn life skills, including any of the skills described in the AAID definition of "adaptive behavior."  Plaintiff alleges his condition causes his physical limitations that prevent him from performing many routine daily activities.  For example,

10

Plaintiff alleges that he generally cannot move his body, he cannot position his own head, and he cannot control his tongue. Although severely debilitating, these are impairments in Plaintiff's functioning, not his behaviors, his cognition, or his mental faculties to learn life skills.[4] The Court concludes that Plaintiff has failed to allege that his condition results in "impairment of . . . adaptive behavior similar to that of mentally retarded persons." See 42 C.F.R. § 435.1010(a)(2).

The Court's analysis is consistent with the reasoning in Snelling v. South Dakota Department of Social Services, 780 N.W.2d 472 (S.D. 2010), the only reported decision to have addressed the applicability of 42 C.F.R. § 435.1010(a)(2) to conditions resulting only in functional limitations. In Snelling, the claimant

---

[4] Plaintiff's interpretation of 42 C.F.R. § 435.1010(a)(2) is essentially that a person has a "closely related" condition if he suffers from the same physical limitations as someone who suffers from intellectual disability. That is not what subsection (a)(2) defines. The subsection addresses adaptive behavior. Plaintiff's physical limitations are not alleged to have any impact on Plaintiff's mental or cognitive ability to acquire "conceptual, social, and practical skills"—the focus of subsection (a)(2). The Court notes that, in his submissions, Plaintiff acknowledges that subsection (a)(2) concerns adaptive *behavior*. Plaintiff nevertheless then argues that his adaptive *functioning* is akin to that of an intellectually disabled person. As discussed, functioning is not the concern of subsection (a)(2) and is addressed in a separate subsection, subsection (d), of the regulation. See 42 C.F.R. § 435.1010(d) (describing the "functional limitations" element of the "closely related" condition evaluation). To interpret this section as Plaintiff requests would essentially allow any person with a physical impairment to claim COMP Waiver benefits by pointing to an intellectually disabled person with similar physical disabilities. If the government agency had intended subsection (a)(2) to cover these sorts of physical disabilities, it would have said so in the regulation.

suffered from a degenerative condition similar to Plaintiff's in that she had normal intellectual functioning but was severely impaired physically. See 780 N.W.2d at 474. The claimant sought to participate in a Medicaid waiver program whose requirements, like the COMP Waiver's requirements, included the existence of a condition satisfying 42 C.F.R. § 435.1010(a)(2). See id. at 477. The court held that physical limitations alone did not satisfy the requirement because the purpose of 42 C.F.R. § 435.1010(a)(2) is to encompass conditions that impair intellect. Id. at 479. Plaintiff criticizes the reasoning in Snelling because the court did not expressly evaluate whether the claimant suffered impairment in her "adaptive behavior." As discussed above, however, an impairment in "adaptive behavior," under the definition urged by Plaintiff, requires an impairment in the ability to learn skills. The claimant in Snelling, like Plaintiff here, did not suffer an impairment of this kind.

Having concluded that Plaintiff's allegations do not show that he has a condition "closely related" to intellectual disability, Plaintiff's claims against Berry, based on DBHDD's denial of benefits under the COMP Waiver, are required to be dismissed.

## III. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [41] is **GRANTED**. Plaintiff's claims against Frank Berry, in his official capacity as Commissioner of the Georgia Department of Behavioral Health and Developmental Disabilities, are **DISMISSED**.

**SO ORDERED** this 30th day of May, 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE