IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ZACHARY ROYAL,<br><br>      **Plaintiff,**<br><br>v.<br><br>CLYDE L. REESE, III, in his official capacity as Commissioner of the Georgia Department of Community Health, and FRANK BERRY, in his official capacity as Commissioner of the Georgia Department of Behavioral Health and Developmental Disabilities,<br><br>      **Defendants.** | 1:14-cv-25-WSD |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [3]. The Court previously considered Plaintiff's request for a temporary restraining order and now considers Plaintiff's request for a preliminary injunction. Also before the Court is Defendants' Motion to Exclude Testimony of Lisa M. Reisman [71] ("Motion to Exclude").

**I.     BACKGROUND**

    A.     <u>Procedural History</u>

On January 3, 2014, Plaintiff Zachary Royal ("Plaintiff"), a severely disabled Medicaid recipient, filed this action against Defendants Clyde L. Reese, III ("Reese"), in his official capacity as Commissioner of the Georgia Department of Community Health ("DCH"), and Frank Berry ("Berry"), in his official capacity as Commissioner of the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD") (collectively, "Defendants"). In his Complaint [1], Plaintiff alleges that Berry violated Title II of the Americans with Disabilities Act of 1990 (the "ADA") and the Rehabilitation Act of 1973 (the "Rehabilitation Act") by denying Plaintiff's application for participation in the Medicaid Comprehensive Supports Waiver Program (the "COMP Waiver"). Plaintiff alleges that Reese violated Title II of the ADA and the Rehabilitation Act by failing to include at least 84 hours per week of in-home skilled nursing care in the services provided to Plaintiff under the Medicaid Independent Care Waiver Program (the "IC Waiver").

On January 3, 2014, Plaintiff filed his Motion for a Temporary Restraining Order and Preliminary Injunction in which he requested: (i) a temporary restraining order requiring Defendants to furnish Plaintiff with 12 hours per day of in-home

skilled nursing care (the "TRO Motion"), and (ii) a preliminary injunction requiring Defendants to furnish Plaintiff with 12 hours per day of in-home skilled nursing care (the "Preliminary Injunction Motion"). On January 7, 2014, the Court granted, in part, Plaintiff's TRO Motion and ordered Defendants, pending resolution of the Preliminary Injunction Motion, to provide Plaintiff with three visits per day by a certified nursing assistant ("CNA") and two visits per day by a skilled nurse. Skilled nursing and CNA services have been administered since at least February 20, 2014.[1]

On February 18, 2014, the Court conducted a hearing on Plaintiff's Preliminary Injunction Motion at which Plaintiff presented testimony from his fact witnesses. The Court continued the hearing to allow Defendants to depose Plaintiff's expert witnesses before hearing their testimony.[2] On June 18, 2014, the hearing resumed, and the Court heard testimony from Plaintiff's sole expert,

---

[1] As part of the Court's order on the TRO Motion, the parties are required to provide each week a joint report of Plaintiff's physical status and to confirm that required care visits were made. These reports have been filed each week.

[2] On May 30, 2014, the Court entered an Order [69] dismissing, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's claims against Berry based on the COMP Waiver.

Lisa M. Reisman, R.N. ("Reisman").[3]

    B.    <u>Facts</u>[4]

        1.    *Plaintiff's Condition*

Plaintiff suffers from Spinal Muscular Atrophy (SMA) Type 1, Werdnig-Hoffman syndrome, a progressive neuromuscular disease. (1 Hr'g Tr. [39] at 10–11, 65–66.) As a result of this condition, Plaintiff has experienced loss of muscle control and is unable to move functionally, with the exception of slight movement in his fingers. (<u>Id.</u> at 11, 38, 66, 75; 2 Hr'g Tr. [77] at 316–17.) He does not have control of his head, and he has difficulty controlling his breathing, talking, and swallowing. (1 Hr'g Tr. [39] at 70; 2 Hr'g Tr. [77] at 317–18.) Plaintiff is dependent on others for all activities of daily life, including eating and moving. (1 Hr'g Tr. [39] at 11.) He is not capable of caring for himself. (<u>Id.</u>)

Plaintiff's condition requires a variety of treatments and interventions, some of which are administered on a scheduled basis throughout the day and some of which are administered only on an "as needed" basis. The scheduled treatments

---

[3] On June 12, 2014, Defendants filed their Motion to Exclude Reisman's testimony on the ground that the testimony is not admissible under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

[4] These facts are taken from the evidence submitted in connection with the Preliminary Injunction Motion, including testimony offered during the preliminary injunction hearing, and from the undisputed allegations in Plaintiff's Complaint.

include the administration of certain medications, nebulizer treatments, the use of a cough-assisting in-exsufflator, and the use of a BiPAP breathing-assistance machine.  (See id. at 48; 2 Hr'g Tr. [77] at 317, 333–35.)  The "as needed" treatments include the administration of certain medications, including oxygen, and "deep suctioning" of Plaintiff's airway.  (See 2 Hr'g Tr. [77] at 398.)  Failure to timely administer deep suctioning could be life threatening to Plaintiff.  There is no evidence that such an event has occurred to date.

2.   *Services Available to Plaintiff*

Plaintiff has lived his entire life in his family home in Dooly County, Georgia.  (1 Hr'g Tr. [39] at 37, 45.)  Since 2007, when Plaintiff's mother died, Plaintiff has lived with his father Christopher Royal ("Mr. Royal").  (Id.)

Before turning 21 years of age on January 6, 2014, Plaintiff participated in the Georgia Pediatric Program ("GAPP") Medicaid program.  GAPP is available to qualified individuals under the age of 21.  (Id. ¶¶ 4, 21.)  Under GAPP, an eligible participant, like Plaintiff, is entitled to receive certain care, including 84 hours per week, 12 hours per day, of in-home skilled nursing care.[5]  (Id. ¶ 21.)  The skilled nurses were available to perform the various treatments and interventions that

---

[5] "Skilled" nursing care means care provided by a registered nurse ("RN") or a licensed practical nurse ("LPN").

Plaintiff required.  (See id. ¶ 15.)  Mr. Royal provided Plaintiff's care when skilled nurses were not in the Royal home.

When Plaintiff turned 21, he was no longer eligible to receive services under GAPP.  Before Plaintiff turned 21, he sought to secure continuation of the 84 hours of in-home skilled nursing care he was receiving under GAPP by applying for services under two Georgia Medicaid programs: the COMP Waiver and the IC Waiver programs.  (Id. ¶ 23.)  On April 24, 2013, DBHDD denied Plaintiff's application for COMP Waiver services on the ground that Plaintiff does not have an intellectual disability and therefore is not eligible for participation in the COMP Waiver program.  (Id. ¶ 27.)[6]  DCH approved Plaintiff for services under the IC Waiver program, including care by personal care aides ("PCAs").  (Id. ¶¶ 30–31.)[7]  DCH did not approve in-home skilled nursing care for Plaintiff.  (Id.)[8]

---

[6] In its May 30, 2014, Order, the Court dismissed Plaintiff's COMP Waiver claims on the ground that Plaintiff does not have a condition "closely related" to an intellectual disability and thus does not qualify for services under the COMP Waiver program.

[7] In this case, Plaintiff is being provided PCA care by CNAs.

[8] Under the IC Waiver, Plaintiff is eligible to receive a certain number of skilled nursing visits, including up to one visit per day.  Although neither party submitted evidence definitively showing Plaintiff's eligibility for daily skilled nursing visits, Plaintiff does not dispute that these visits are available to him.  Plaintiff also may be eligible to participate in a "self-directed" program under the IC Waiver in which he may use Medicaid funds to purchase skilled nursing care.  In his submission to

### 3. *Plaintiff's Care Needs*

Plaintiff's expert Lisa Reisman testified that CNAs are capable of providing certain services and treatments for Plaintiff, including feeding, bathing, and turning Plaintiff and alerting skilled caregivers of urgent needs they are not qualified to meet.  (2 Hr'g Tr. [77] at 327–28, 337.)[9]  Reisman testified that certain treatments

---

the Court, Plaintiff argues that this "self-directed" program would allow him only to pay a provider $14.07 per hour, and this amount is not sufficient to hire a skilled nurse.  Plaintiff has not submitted any evidence supporting that he would be limited to paying $14.07 per hour or that he otherwise would not have sufficient funding under the self-directed program to procure the skilled nursing care he seeks or that what he can procure would not be adequate.

[9] The Court found Reisman's testimony unreliable and well beyond her scope of expertise and well beyond the area in which she was certified as an expert.  She was qualified as an expert in the "practice of nursing," and she stated her understanding that her purpose at the hearing—and the scope of her testimony—was "to ascertain what his level of need—of care is needed, what needs to be provided by a nurse, an LPN or an RN." (2 Hr'g Tr. [77] at 309, 389.)  Reisman, however, was asked to explain the NOW and COMP Waiver Medicaid programs (even though these programs are not at issue in this case—she admitted she does not provide services under the IC Waiver program at issue here), and she testified that Mr. Royal could not obtain employment even though he was available to work.  She testified about programs for which she does not have experience, and also about Mr. Royal's employability even though she had not spoken to him about his job search or his job skills.  (Id. at 308, 323, 395–96.)  She also made various assumptions about whether the skilled nursing services certified as having been provided to Plaintiff, as indicated in nursing notes of Ms. Tondee, really could have been provided in the time indicated.  She "assumed" they could not even though she made no effort to contact the care provider to discuss the services indicated and whether she or a CNA provided the services.  (Id. at 384–88.)  Reisman at times was not objective or credible in her testimony, and the Court has not considered the opinions she offered that were outside the area on which she

and interventions are required by state law to be administered by an RN or LPN. These treatments also are allowed, consistent with state law, to be provided by a family member.  The care that a family member may provide includes the administration of medications and deep suctioning of Plaintiff's airway, the two principal care services Plaintiff requires that cannot be administered by a CNA. (Id. at 332, 336–37.)  Plaintiff's need for "as needed" medications and "as needed" deep suctioning requires either a skilled nurse or a willing and capable family member.  (Id. at 341.)

Reisman testified that Mr. Royal, Plaintiff's father, is capable of providing Plaintiff's care when a skilled nurse is not available (id. at 332, 387), and Mr. Royal has done so for a number of months, including the entire period since the Court entered its TRO.  The status reports received indicated that Plaintiff's medical condition has been properly managed and he has received the required regular and "as needed" care for his condition.  Mr. Royal testified that he is currently unemployed and is thus generally present in the home he shares with

---

was qualified to testify as an expert.  The Court, however, found that Reisman provided helpful testimony on matters involving nursing care, including on the issue of the care Plaintiff requires and the sources from which it is available.

8

Plaintiff.  (See 1 Hr'g Tr. [39] at 54.)[10]  Mr. Royal administers Plaintiff's "as needed" medications, and he testified that he is willing to perform deep suctioning, if necessary.  (1 Hr'g Tr. [39] at 51–52, 56–59.)[11]

## II. DISCUSSION

### A. Legal Standard

A party seeking preliminary injunctive relief must produce evidence demonstrating: (1) a substantial likelihood of success on the merits of his claims; (2) that plaintiff will suffer irreparable injury unless an injunction is issued; (3) that

---

[10] Mr. Royal has stated he wants to return to work to generate additional resources for his family.  (1 Hr'g Tr. [39] at 55.)  The record does not show what effort he has made to search for employment but does support that he has periods of time in which skilled nurses, or other family members, are caring for Plaintiff.  Since at least February 20, 2014, Defendants have provided, pursuant to the TRO, four hours per day of skilled nursing care to Plaintiff, in addition to 12 hours per day of care by CNAs, even though the Court's January 7, 2014, Order required 3 hours of CNA services.  (See Status Report, Feb. 21, 2014 [38].)  Mr. Royal testified that Plaintiff's grandparents also are available, on occasion, to relieve Mr. Royal of care responsibilities.  (1 Hr'g Tr. [39] at 46.)  He thus has the capacity to conduct a job search.

[11] Although Mr. Royal testified that he "can't do deep suctioning," he also testified that he "would try to suction him" if necessary.  (1 Hr'g Tr. [39] at 51–52.)  The Court notes that, from 2007 to January 2014, while Plaintiff was a GAPP beneficiary, Mr. Royal, alone, provided Plaintiff's care for 12 hours each day.  Since January 2014, Mr. Royal, alone, has provided up to 24 hours per day of care to Plaintiff.  Plaintiff has not required institutionalization during these periods.  Plaintiff has not contended that Mr. Royal is not capable or available to perform deep suctioning, if required.

the threatened injury to plaintiff outweighs any harm the proposed injunction might cause the non-moving party; and (4) that the requested injunction would not be adverse to the public interest.  Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp., 715 F.3d 1268, 1273–74 (11th Cir. 2013).  "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites."  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

The movant cannot rest on allegations in his pleadings, but must present competent evidence establishing all four requirements for injunctive relief.  See id.  If the movant fails to establish one or more of the four requirements, the Court is not required to address the others.  Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994).  The first requirement, that the movant demonstrate a substantial likelihood of success on the merits, is considered the most important of the four.  See Odebrecht, 715 F.3d at 1274 ("Here, as in so many cases, the first question is critical."); Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986) ("Ordinarily the first factor is the most important.").

    B.    Analysis

Title II of the ADA prohibits certain forms of discrimination by "public entities," including state government agencies, against individuals with disabilities:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

See 42 U.S.C. § 12132; see also id. § 12131(1) (defining "public entity"). The Rehabilitation Act similarly prohibits such discrimination by entities that receive federal funds:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

Pursuant to congressional mandate, the Attorney General promulgated regulations implementing the anti-discrimination provisions of Title II and the Rehabilitation Act. See Olmstead v. Zimring, 527 U.S. 581, 591–92 (1999); see also 28 C.F.R. §§ 35.130, 41.51. These regulations provide that public entities and recipients of federal funds must administer their services, programs, and activities "in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d); accord id. § 41.51(d). In Olmstead, the Supreme Court held that the failure to provide services "in the most integrated setting" may constitute discrimination under Title II and the Rehabilitation Act. 527 U.S. at 597. The court held that public entities are required to provide

11

community-based treatment, as opposed to institutional treatment, to disabled individuals "when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated." Id. at 607.

In this case, Plaintiff asserts that the "most integrated setting" appropriate for his treatment is his home. He asserts that, to remain in his home, he requires at least 12 hours of skilled nursing care per day.[12] The parties agree that Plaintiff does not oppose in-home treatment, that treating physicians have determined that in-home treatment is appropriate, and that Defendants can reasonably accommodate *some* in-home treatment. The parties dispute the exact services Plaintiff needs to remain in his home and the number of hours they are required to

---

[12] To the extent Reisman contends that 12 hours per day of skilled nursing care is required, her opinion does not have a factual basis, and her reasoning for it is seriously flawed and relies on flawed syllogistic premises. Her reasoning is that when Plaintiff was under the GAPP program—where he was entitled to 12 hours of skilled nursing care while under the age of 21—a doctor had signed off on the care plan. (2 Hr'g Tr. [77] at 393.) While this care was provided under GAPP, the plan "was working" (id. at 390), and that unless "something changed or you had some information that would show that that twelve hours was not necessary" it should be coextensive. She then considered that for the past six months, Plaintiff has received skilled nursing care twice a day for two hours per visit and care by a CNA for twelve hours per day. When asked if this was adequate, Reisman testified: "As long as the father is there to provide the care, it appears to me that the two hours on either side are working and the father is providing the care during the other time." (Id. at 395.)

be provided.  Plaintiff argues that he requires 12 hours per day of skilled nursing care, or else he will require institutionalization.  The record does not support this demand for services to meet the requirement for services to be rendered for Plaintiff to continue to reside in his home.

Lisa Reisman, Plaintiff's nursing expert, was the only witness who appeared at the June 18, 2014, hearing and the only expert presented in this case.  Reisman testified that Plaintiff's condition requires two types of "as needed" treatments.  These two treatments can be performed by a skilled nurse or a family member willing to perform them when they are required.  They are: (i) deep suctioning and (ii) administering "as needed" medications.  Plaintiff thus requires the availability of the "as needed" care from either a skilled nurse or a family member each day.[13]

The parties do not dispute that, under the IC Waiver, Plaintiff is entitled to receive a visit from a skilled nurse every day.  Reisman testified that a visiting nurse is capable of administering Plaintiff's "as needed" treatments if they are necessary during the nurse's visit.  The record also shows that Mr. Royal is able to provide Plaintiff's care whenever a skilled nurse is not in the home.  Mr. Royal is not currently employed and generally is physically present in the home.  Mr. Royal

---

[13] Reisman did not testify that a skilled nurse or family member must constantly provide care for Plaintiff, only that a skilled nurse or family member must always be available to administer an "as needed" treatment when necessary.

administers Plaintiff's "as needed" medications, and he is willing to perform deep suctioning, if necessary.[14]  The record does not show the length of the visits to which Plaintiff is entitled.  As noted above, Plaintiff may have the option, under the "self-directed" IC Waiver alternative, to purchase additional skilled nursing visits using Medicaid funds.  Although Plaintiff appears to dispute his ability to purchase skilled nursing visits, Plaintiff has not submitted any evidence supporting that funds are not available to procure skilled nursing services or the amount required.  Although not clearly established in the record, the Court understands, as a matter of common sense, that Mr. Royal is not able to be in his home and ready to care for Plaintiff 24 hours per day, every day.  (See 2 Hr'g Tr. [77] at 315.)  As discussed above, however, Plaintiff has the ability to receive skilled nursing visits on a daily basis, and may have the ability to purchase additional skilled nursing

---

[14] Although Mr. Royal testified that he "can't do deep suctioning," he also testified that he "would try to suction him" if necessary.  (1 Tr. [39] at 51–52.)  From 2007 to January 2014, while Plaintiff was a GAPP beneficiary, Mr. Royal, alone, provided Plaintiff's care for 12 hours each day.  Since January 2014, Mr. Royal, alone, has provided up to 24 hours per day of care to Plaintiff.  Mr. Royal's purported inability to perform deep suctioning during these extensive periods of time did not require Plaintiff to be institutionalized.  The Court finds that the record does not support that Mr. Royal's ability or inability to deep suction will now require Plaintiff to be institutionalized.  The Court notes further that during the over five months since the TRO was entered Plaintiff received his required medication, was not deep suctioned, was not institutionalized, and did not have to be taken to an emergency room or a doctor for treatment for exigent as needed treatment.

care. Plaintiff thus has not shown that these visits are insufficient to allow Mr. Royal to leave the home to attend to the management of his home or even to search for employment. Although Mr. Royal specifically testified that he currently is not able to look for a job while he is caring for Plaintiff (1 Tr. [39] at 55), that general statement is not credible. Mr. Royal did not testify, and the record does not otherwise show, that Mr. Royal has not been able, and would not be able in the future, to engage in job search activities, including those requiring him to be out of his home, considering the periods of time when skilled nurses would in the future be available under the IC Waiver.

In summary, the record here is that, to remain in his home, Plaintiff continuously needs the availability of care from either a skilled nurse or a family member. Plaintiff has not shown that his father will not be able to provide the necessary care during those times of the day when visiting skilled nurses are not present. For this reason, the Court finds that Plaintiff has not shown a likelihood of success on the merits of his claim that he requires 12 hours per day of skilled nursing care to remain in his home.[15] Plaintiff's Preliminary Injunction Motion to

---

[15] The Court's finding is based on the current availability of Mr. Royal to provide for Plaintiff's needs. In the event Mr. Royal is no longer available to provide care for Plaintiff, because he obtains employment or for any other reason, Plaintiff may move the Court to consider how this change in availability impacts, if its does,

15

require 12 hours per day of skilled nursing care is denied.[16, 17]

The Court also notes that, from at least February 20, 2014, to the present, Plaintiff has received two, two-hour visits each day from a skilled nurse. Defendants have not argued that this visit schedule is inconsistent with the requirements of the IC Waiver program. The focus of the litigation has been on whether Plaintiff is entitled to 12 hours of skilled nursing care per day or that Defendants would not consider a self-directed program for Plaintiff. That is, Defendants have not argued that they are obligated to provide, and thus will only provide, one hour of skilled nursing care per day. If Defendants intend to reduce, to one hour, the skilled nursing care provided to Plaintiff, the Court instructs Defendants to advise Plaintiff and the Court before the number of skilled nursing care or CNA visits is reduced or before the schedule is altered. The purpose of this

---

Defendants' obligations under the ADA and the Rehabilitation Act. For this reason, the Court will continue to exercise jurisdiction over this action.

[16] Because the Court finds that Plaintiff has not shown a likelihood of success on the merits, the Court does not consider the remaining factors governing preliminary injunctive relief. The Court notes that, because Plaintiff has not established a need for 12 hours per day of skilled nursing care, Plaintiff necessarily has not shown that he will be irreparably harmed in being denied 12 hours per day of such care. Thus, Plaintiff has not met the second criterion for a preliminary injunction.

[17] Because the Court denies Plaintiff's Preliminary Injunction Motion, Defendants' Motion to Exclude is moot and is denied on that basis.

16

notice is to allow Plaintiff to take action he deems appropriate to challenge any planned reduction, including whether it is consistent with Defendants' obligations under the ADA, the Rehabilitation Act, or the IC Waiver program.

### III. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Preliminary Injunction Motion, contained in his Motion for Temporary Restraining Order and Preliminary Injunction [3], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Exclude Testimony of Lisa M. Reisman [71] is **DENIED AS MOOT**.

**SO ORDERED** this 1st day of July, 2014.

_William S. Duffey_
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE